UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JULIANN ANDREEN**<br>1016 17th Place NE, #4<br>Washington, DC  20002<br><br>    **PLAINTIFF**<br><br>   v.<br><br>**CHIEF CATHY L. LANIER**<br>Metropolitan Police Department<br>300 Indiana Avenue NW<br>Washington, DC  20001<br>in her personal and official capacities,<br><br>**THE DISTRICT OF COLUMBIA**<br>441 4th Street NW<br>Washington, DC  20001<br>Serve: Mayor Adrian Fenty and<br>          Attorney General Peter J. Nickles<br>          for the District of Columbia,<br><br>**OFFICER JUSTIN LINVILLE,**<br>Metropolitan Police Department<br>individually and in his official capacity,<br>Serve:   Officer Justin Linville<br>             Address Unknown<br><br>**SERGEANT JOHN HAINES**<br>Metropolitan Police Department<br>individually and in his official capacity,<br>Serve:   Sergeant John Haines<br>             Address Unknown<br><br>**SERGEANT LESLIE PARSONS**<br>Metropolitan Police Department<br>individually and in his official capacity,<br>Serve:   Sergeant Leslie Parsons,<br><br>         (continued) | Case No. _____<br><br><br>**JURY TRIAL DEMANDED** |


**SERGEANT CURT SLOAN**
Metropolitan Police Department
individually and in his official capacity,
Serve:   Sergeant Curt Sloan,
            Address Unknown

**DETECTIVE EARL DELAUDER**
Metropolitan Police Department
individually and in his official capacity,
Serve:   Detective Earl Delauder,
            Address Unknown

**INVESTIGATOR JOSEPH ABDALLA**
Metropolitan Police Department
individually and in his official capacity,
Serve:   Investigator Joseph Abdalla,
            Address Unknown

and

**OTHER UNKNOWN OFFICERS**
Metropolitan Police Department
individually and in their official capacities,
if and when they are identified.

           **DEFENDANTS**

## VERIFIED COMPLAINT

Ms. Juliann Andreen respectfully submits this verified complaint seeking relief for the tortious and unconstitutional actions of the District of Columbia Metropolitan Police Department (MPD) and its officers. The Plaintiff has given notice to the Mayor of the District of Columbia in accordance with District of Columbia Code Ann. §12-309.

## I.  INTRODUCTION

On June 11, 2007, at approximately 5:30 PM, Officer Justin Linville, Sergeant John Haines, Sergeant Leslie Parsons, Sergeant Curt Sloan, Detective Earl Delauder, Investigator Joseph Abdalla, and other unknown officers (MPD officers) executed a warrant that was defective.  The MPD officers broke down the front door to gain access to Ms. Andreen's building and then broke down another door to enter her apartment.

## II.  JURISDICTION AND VENUE.

1. This Court has jurisdiction under 28 U.S.C. §§1331 and 1343, and 42 U.S.C. §§1983 and 1988.  The Plaintiff further invokes this Court's pendent jurisdiction to hear and decide any claims arising under state and common law.

2. Venue is proper in this court.  All of the actions described in this Complaint took place in the District of Columbia.

## III.  PARTIES

3. Plaintiff Juliann Andreen resided at 1016 17th Place NE, Apartment #4, Washington, DC 20002, at the time of the incident.

4. Defendant Cathy L. Lanier is the Chief of Police and agent for the District of Columbia Metropolitan Police Department (MPD), located at 300 Indiana Avenue NW, Washington, DC  20001.  She held this position at all times relevant to this Complaint.  She is sued in both her official and individual capacities.

5. Defendant Justin Linville is an individual who, during all relevant times, was employed and acting under color of law for the District of Columbia as a police officer.  At the time of the actions alleged, Defendant Linville worked at the Fifth District of the District of

Columbia's Metropolitan Police Department. Officer Linville is being sued in both his official and individual capacities.

6. Defendant John Haines is an individual who, during all relevant times, was employed and acting under color of law for the District of Columbia as a police officer. At the time of the actions alleged, Defendant Haines worked at the Fifth District of the District of Columbia's Metropolitan Police Department. Sergeant Haines is being sued in both his official and individual capacities.

7. Defendant Leslie Parsons is an individual who, during all relevant times, was employed and acting under color of law for the District of Columbia as a police officer. At the time of the actions alleged, Defendant Parsons worked at the Fifth District of the District of Columbia's Metropolitan Police Department. Sergeant Parsons is being sued in both his official and individual capacities.

8. Defendant Curt Sloan is an individual who, during all relevant times, was employed and acting under color of law for the District of Columbia as a police officer. At the time of the actions alleged, Defendant Sloan worked at the Fifth District of the District of Columbia's Metropolitan Police Department. Sergeant Sloan is being sued in both his official and individual capacities.

9. Defendant Earl Delauder is an individual who, during all relevant times, was employed and acting under color of law for the District of Columbia as a police officer. At the time of the actions alleged, Defendant Delauder worked at the Fifth District of the District of Columbia's Metropolitan Police Department. Detective Delauder is being sued in both his official and individual capacities.

10. Defendant Joseph Abdalla is an individual who, during all relevant times, was employed and acting under color of law for the District of Columbia as a police officer. At the time of the actions alleged, Defendant Abdalla worked at the Fifth District of the District of Columbia's Metropolitan Police Department. Investigator Abdalla is being sued in both his official and individual capacities.

11. Defendant District of Columbia is a municipality that owns, operates, manages, directs, and controls the District of Columbia Metropolitan Police Department ("MPD") and is being sued for the unlawful actions of its MPD officers.

## IV.  STATEMENT OF FACTS

12. Juliann Andreen reasserts paragraphs 1-11 of this complaint.

13. Ms. Andreen lived at 1016 17th Place NE, Apartment #4, Washington, DC at the time of the incident giving rise to this complaint.

14. Ms. Andreen was active in the local community and worked with neighbors to keep the neighborhood safe and drug free.

15. Ms. Andreen owns 1016 17th Place NE. She bought the property over four years ago.

16. There are four apartment units at 1016 17th Place NE.

17. The search warrant did not name Ms. Andreen.

18. On June 11, 2007, at approximately 5:10 PM, Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers executed a warrant based on a flawed affidavit on Ms. Andreen's 1016 17th Place NE home.

19. Ms. Andreen, a legislative assistant for U.S. Senator Orrin Hatch, was not home when the officers executed the warrant.

20. The officers knocked a whole in the front door, damaged the door frame and broke both locks.

21. The officers knocked holes in the apartment door locks, damaged the door frame and both locks to enter Ms. Andreen's residence.

22. The officers attempted to secure Ms. Andreen's apartment door from inside her apartment because it was too damaged by the officers to properly close any longer from the outside.

23. The apartment door was not safely secured.

24. The officers the left and departed 1016 17th Place NE without securing the front door.

25. The officers left Ms. Andreen's apartment and building through a rear entrance. They exited the premises through a secured gate at the back of the property, but did not properly close that gate.

26. Dr. Natalie Houghtby-Haddon, a tenant of Ms. Andreen's, returned home between 6:00 and 6:30 PM and saw that the lower right panel of the front door was punched in.

27. Dr. Houghtby-Haddon assumed burglars had broken into the building.

28. She immediately called Ms. Andreen to report the damage to the front door.

29. Ms. Andreen asked Dr. Houghtby-Haddon to check her apartment. She reported to Ms. Andreen that she saw damages to Ms. Andreen's apartment door and thought Ms. Andreen had been burglarized.

30. Ms. Andreen immediately returned home and inspected the damage to the front and apartment door. She called the police to report a burglary.

31. Upon entering her apartment, Ms. Andreen noticed family photo albums and pictures strewn across the television and an antique dresser, a bill opened and laid out, drawers opened, covers off her stereo speakers and her bed mattress moved.

32. Sergeant Haines responded to Ms. Andreen's call to the police.

33. Sergeant Haines explained to Ms. Andreen that he and other officers executed a warrant on her apartment to search for drugs, based on an undercover officer's purchase of cocaine from an individual in Ms. Andreen's apartment.

34. Sergeant Haines told Ms. Andreen that an agent of MPD purchased cocaine from a African-American man in her apartment.

35. The warrant did not specify that Ms. Andreen owned 1016 17th Place NE.

36. The warrant did not specify that Ms. Andreen resided in Apartment #4 at that address.

37. The affidavit stated that a Special Employee purchased crack cocaine from an unknown male inside Apartment #4.

38. The affidavit did not specify the race or physical description of the unknown male who allegedly sold the drugs inside Apartment #4.

39. Officer Linville wrote the affidavit under Sergeant Haines' supervision.

40. Sergeant Haines questioned Ms. Andreen about individuals who had recently been in her apartment.

41. Ms. Andreen explained that her daughter and her daughter's girlfriend, both from San Diego, had visited on May 2007. Ms. Andreen's son, also from San Diego, had also visited very briefly in June 2007.

42. Ms. Andreen did not stay in her apartment that night. She felt unsafe because the officers had damaged the locks and doors to the outside and her apartment and neither was secure.

43. On June 12, 2007, Ms. Andreen stopped by 1016 17th Place NE.

44. When Ms. Andreen arrived, the front door was wide open. She immediately called 311, a non-emergency police number, for an officer to enter to ensure it was safe.

45. Three officers came to inspect the house. One officer recognized Ms. Andreen from neighborhood meetings and was surprised to hear that other officers had raided her building to search her apartment for drugs.

46. Ms. Andreen fixed both doors as quickly as possible because she was worried about her safety and that of her tenants.

47. Ms. Andreen was unsatisfied with Sergeant Haines' initial explanation of the alleged drug sale. She was concerned that an individual had broken into her apartment and was selling drugs.

48. An unknown officer told Ms. Andreen that the drug purchase was done by a Confidential Informant. Another unknown officer told her that a Special Employee of MPD made the purchase.

49. An unknown officer told Ms. Andreen that the Special Employee bought the cocaine from a black man at the door of her apartment and heard a white woman laughing inside the apartment.

50. Ms. Andreen questioned how the Special Employee could know it was a white woman when the Special Employee did not enter her apartment.

51. The MPD did not compensate Ms. Andreen for the damages to her apartment.

52. Ms. Andreen believed the officers were lying to her.

53. On June 12, 2007, Ms. Andreen went to the MPD 5th District office and complained to Lieutenant White about the officers who executed the warrant.

54. Lieutenant White called Ms. Andreen that evening and told her that the information in the affidavit came from a confidential informant, not an undercover officer.

55. According to Lieutenant White, the confidential informant bought drugs from a man in Ms. Andreen's apartment, with a woman present.

56. Ms. Andreen called Lieutenant White several more times to get answers about what happened on June 11, 2007, but never received a further response.

57. On June 13, 2007, Ms. Andreen went to the Office of the Chief of Police and met with Officer A. Contee.  Ms. Andreen explained her concerns, and Officer Contee said she would report the incident to Chief Lanier.

58. On June 14, 2007, Ms. Andreen again called 311 to have officers come to her home to ensure that it was safe before she entered it because the doors had still not been repaired.

59. Ms. Andreen moved to her Baltimore home because she no longer felt safe in her home at 1016 17th Place NE, and felt the MPD would not protect her.

60. On June 21, 2007, Ms. Andreen wrote a letter to Mayor Adrian Fenty concerning the police breaking into her home on June 11, 2007, and the lack of information and response she received from the MPD.

61. Mayor Fenty forwarded Ms. Andreen's complaint to MPD.

62. On June 27, 2007, Ms. Andreen again complained to the Office of the Chief of Police about MPD's lack of response to her request for information and failure to pay for the damage to her home.

63. On July 1, 2007, Lieutenant White called Ms. Andreen to inform her that the MPD was conducting an investigation concerning the incident.

64. Per MPD's request, Ms. Andreen submitted a list of individuals who had recently been in her apartment, including her daughter and her daughter's friend, her son, and her friend, a police officer.

65. On August 5, 2007, Ms. Andreen met with Lieutenant White to discuss the unofficial results of the investigation. Lieutenant White said the officers had followed protocol.

66. This time, Lieutenant White told Ms. Andreen that a reliable Special Employee had walked into the building and purchased crack in the hallway, not in her apartment. The Special Employee, according to Lieutenant White, stated that the door of Apartment #4 was slightly opened. However, officers watching the Special Employee did not go inside the building and observe the alleged buy. Lieutenant White said the Special Employee walked right into 1016 17th Place NE.

67. Ms. Andreen told Lieutenant White, and later Mayor Fenty, about the inconsistencies in the different versions of explanations she received since the officers broke into her apartment on June 11, 2007, including the identity of the individual who made the purchase, where in the building the individual made the purchase, and what the observing officers witnessed during the purchase.

68. On September 11, 2007, Ms. Andreen received an email from Chief Lanier assuring her that she had a "policy of transparency" and would ask the Director of Internal Affairs about the investigation.

69. According to Chief Lanier, Inspector Matthew Klein was looking into the investigation.

70. Ms. Andreen met with Lieutenant Dean Welch the week of September 30, 2007, concerning the investigation.

71. On Thursday October 25, 2007, Chief Lanier emailed Ms. Andreen concerning the result of the investigation. Chief Lanier told her that the search of her apartment was in accord with MPD procedures, including the affidavit and request for a warrant based on the affidavit.

72. The MPD finally permitted Ms. Andreen to pick up a copy of the investigation on November 13, 2007.

73. In an undated memorandum, the Director of the Internal Affairs Division acknowledged that the Special Employee may have provided false information.

74. The Director also acknowledged that, "it is possible that the wrong apartment was searched based on erroneous information."

75. Lieutenant Dean Welch recommended in the Investigation Report that: (1) the Office of Professional Development, Directives Division, should set a standard for how to properly secure a premises after forced entry by MPD officers, (2) departmental reviews of affidavits should be done by officials at the rank of lieutenant or above with appropriate experience in warrant applications, and (3) Ms. Andreen receive honest information from Sergeant Haines concerning the affidavit.

76. In the investigation report, there is no statement from or evidence that the MPD interviewed Officer Linville, the Officer who wrote the affidavit, concerning requesting and subsequently executing the search warrant.

77. Chief of Police Lanier has stated that she is "responsible and accountable for all activities involving the Metropolitan Police Department and establishes professional standards that help maintain a higher level of integrity and ethical conduct than is generally expected of others." (MPD website, www.mpdc.dc.gov)

## V.  FIRST CAUSE OF ACTION

### CIVIL RIGHTS CLAIM UNDER 42 U.S.C. § 1983
### AND CONSTITUTIONAL CLAIM UNDER THE 4TH AMENDMENT.

78.  Ms. Andreen reasserts paragraphs 1-77.

79. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, and other unknown officers, under the color of law, deprived Ms. Andreen of her Fourth Amendment right to be secure in her home, papers and effects and to be free from unreasonable search of her home in violation of 42 U.S.C. § 1983.

80. Officer Linville and Sergeant Haines violated Ms. Andreen's rights when he executed a warrant based on an affidavit that was so deficient and lacking in facts as to render Officer Linville's and Sergeant Haines' belief in probable cause to be unreasonable.

81. There was no fact-check review of the affidavit prior to its use to request the search warrant.

82. The officers failed to verify any information used to support the warrant.

83. The other officers knew or should have known, as reasonable, well trained officers, that the search was illegal because of the deficient affidavit, despite the judge's signature on the warrant.

84. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, and other unknown officers intentionally executed the warrant on Ms. Andreen's home knowing that the search was unreasonable and a violation of Ms. Andreen's Fourth Amendment right.

## VI.  SECOND CAUSE OF ACTION

### CIVIL RIGHTS CLAIM UNDER 42 U.S.C. § 1983 AND CONSTITUTIONAL CLAIM UNDER THE 4TH AMENDMENT.

85. Ms. Andreen reasserts paragraphs 1-84.

86. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, and other unknown officers violated Ms. Smith's Fourth Amendment right to be secure in her home, papers and effects and to be free from unreasonable search when they executed a search warrant on her home based on a deficient affidavit in violation of 42 U.S.C.§ 1983.

87. In executing the warrant, the officers broke down the outer door to enter 1016 17th Place NE, and an inside door to enter Ms. Andreen's apartment.

88. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla intentionally broke down the doors.

89. The search and damage to Ms. Andreen's home was unreasonable.

## VII.  THIRD CAUSE OF ACTION

### CONSPIRACY

90. Ms. Andreen reasserts paragraphs 1-89.

91. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, and other unknown officers conspired to violate Ms. Andreen's Fourth Amendment right to be secure in her home, papers and effects and to be free from unreasonable search when they executed a search warrant on her home based on a deficient affidavit in violation of 42 U.S.C.§ 1983.

92. The officers intentionally, by their actions and common design, unlawfully conspired, on or before June 11, 2007, to enter Ms. Andreen's building and apartment using a warrant based on a defective affidavit and destroyed two doors.

93. The officers' conspiracy to enter Ms. Andreen's home and damage her home and effects was unreasonable.

### VIII.  FOURTH CAUSE OF ACTION

### CONSPIRACY

94. Ms. Andreen reasserts paragraphs 1-93.

95. Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, Lieutenant White, Lieutenant Dean White, Chief Cathy Lanier, and other known officers conspired to coverup the violation of Ms. Andreen's Fourth Amendment right to be secure in her home, papers and effects and to be free from unreasonable search in violation of 42 U.S.C.§ 1983.

96. The officers intentionally, by their actions and common design, unlawfully conspired, on or after June 11, 2007, to cover-up the violation of Ms. Andreen's right to be secure in her home, papers and effects and to be free from unreasonable search.

97. The officers conspired to delay conducting a full investigation of the incident, to provide identical, cut-and-paste statements in the investigation, and to ignore Ms. Andreen's complaints until Mayor Fenty became involved.

## IX.  FIFTH CAUSE OF ACTION

### INTENTIONAL TORTIOUS DESTRUCTION OF PROPERTY

98. Ms. Andreen reasserts paragraphs 1-97.

99. On July 11, 2007, Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, and other unknown officers intentionally broke down Ms. Andreen's front entrance and apartment doors leading into her home without knocking, leaving the doors damaged beyond repair and locks broken.

100. As a result of the officers' actions, Ms. Andreen had to replace the doors.

## X.  SIXTH CAUSE OF ACTION

### NEGLIGENCE OF OFFICERS

101.  Ms. Andreen reasserts paragraphs 1-100 of this complaint.

102. Officer Linville negligently requested a warrant based on unreliable information and factual inconsistencies, and Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, and other unknown officers negligently used that warrant to break down Ms. Andreen's front door and apartment door without knocking, leaving the doors and frames damaged and locks broken.

## XI.  SEVENTH CAUSE OF ACTION

### RESPONDEAT SUPERIOR

103. Ms. Andreen reasserts paragraphs 1-102.

104. At all relevant times concerning the incident on July 11, 2007, Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla, and other unknown officers acted within the scope of their official duty as Metropolitan Police officers and employees of the District of Columbia.

105. The District is therefore liable for the claims against the defendant officers and should pay appropriate damages to Ms. Andreen.

## XII.  EIGHTH CAUSE OF ACTION

## NEGLIGENT TRAINING AND SUPERVISION

106.  Ms. Andreen reasserts paragraphs 1-105.

107. On or before June 7, 2007, the District of Columbia and MPD Chief Lanier were under the duty to properly educate MPD officers concerning the rights of residents under the United States Constitution and the District of Columbia's laws, including writing an affidavit and obtaining a search warrant, and to train, supervise, investigate, and correct improper actions of MPD officers.

108. The District of Columbia and MPD Chief Lanier, recklessly and without regard for the rights of others, breached their duty to properly educate, train, supervise, investigate, and correct improper actions of employee MPD officers.

109. The District of Columbia's, and MPD Chief Lanier's, failure to properly educate, train, supervise, investigate, and correct improper actions of employee MPD officers was the direct and proximate cause of the damages Ms. Andreen sustained.

110. As a result of the District of Columbia's and Chief Lanier's failure to act, MPD officers violated Ms. Andreen's Fourth Amendment right to be secure in her home, papers and effects

and to be free from unreasonable searches when the they entered her home on an invalid warrant and intentionally destroyed her property.

### XIII. RELIEF REQUESTED

Wherefore, Ms. Andreen seeks the following relief:

(a) Compensatory damages in excess of $150,000.00, to include replacement or repair of the personal property the officers damaged in the search.

(b) Punitive damages to be determined.

(c) An apology from the Defendant Officers, including Chief Lanier.

(d) Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

(e) Any other relief which this court decides is necessary or appropriate in the interests of justice.

Respectfully submitted,

**KLIMASKI & ASSOCIATES, P.C.**

May 9, 2008

_____
James R. Klimaski, #243543

May 9, 2008

_____
Lynn I. Miller, #941559

May 9, 2008

_____
Megins Skolnick, #498452

1625 Massachusetts Avenue NW – Suite 500
Washington, DC 20036-2245
(202) 296-5600
Klimaski@klimaskilaw.com
Miller@Klimaskilaw.com
Skolnick@klimaskilaw.com

***Counsel for Juliann Andreen***

## VERIFICATION

I, Juliann Andreen, have read the above complaint and verify under penalty of perjury that the facts alleged are true to the best of my knowledge and belief.

Executed this ___6th___ day of May, 2008.


*Juliann Andreen*
Juliann Andreen

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Juliann Andreen | MPD Chief Cathy L. Lanier, the District of Columbia, et al. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  n/a (D.C.) (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| James R. Klimaski, Lynn I. Miller<br>1625 Massachusetts Avenue NW -- Suite 500<br>Washington, DC  20036-2245<br>202-296-5600 | D.C. Attorney General's Office or the Office of the U.S. Attorney for D.C. |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | | OR | ○ F. Pro Se General Civil | |
|---|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⦿ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Fourth Amendment of the US Constitution; 28 USC 1331, 1343; 42 USC 1983, 1988. Right to be secure in one's home, papers, and effects.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 150,000.00   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  May 9, 2008   SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.