UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIANN ANDREEN, : <br> : <br> Plaintiff, : <br> : <br> v. :     C.A. No.: 08-0810 (ESH) <br> : <br> CATHY L. LANIER, *et al.*, : <br> : <br> Defendants. : <br> _____ : | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REINSTATE
ON BEHALF OF THE DISTRICT OF COLUMBIA AND POLICE CHIEF CATHY LANIER**

Defendants District of Columbia ("District") and Police Chief Cathy Lanier, by and through undersigned counsel, hereby submit their Opposition to Plaintiff's Motion to Alter or Amend Judgment of the Court's June 27, 2008 Minute Order Granting Defendants' Motion to Dismiss.[1] [Docket # 7]. Reinstatement would be futile because Plaintiff cannot demonstrate that her federal claims are meritorious, and the Court's Order of dismissal should be affirmed.

**PROCEDURAL POSTURE**

Plaintiff filed suit on or about May 9, 2008. On or about June 12, 2008, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). [Docket # 5]. By Minute Entry dated June 27, 2008, this Honorable Court granted Defendants' motion — dismissing all of Plaintiff's federal claims with prejudice, and her state law claims without prejudice — because Plaintiff conceded Defendants' motion by failing to timely respond. *See* LCvR 7(b). Pursuant to Fed. R. Civ. P. 41(b), the

---

[1] While Plaintiff claims that she miscounted the date on which the opposition was due, she fails to provide sufficient and justifiable reasons to support that her conduct constitutes excusable neglect.

dismissal resulting from Plaintiff's failure to comply with LCvR 7(b) operates as an adjudication on the merits.

On or about June 30, 2008, Plaintiff filed a Motion to Alter or Amend Judgment of the Court's June 27, 2008, Minute Order Granting the Motion to Dismiss of District of Columbia and Chief Cathy Lanier. [Docket # 7]. Plaintiff also submitted a proposed memorandum in opposition to Defendants' Motion to Dismiss. [Docket # 6-2]. On or about July 1st, the Court informed undersigned counsel that Plaintiff's submission would be treated as a Motion to Reinstate, presumably under Fed. R. Civ. P. 60(b). Because the Complaint and the proffered opposition are insufficient as a matter of law to defeat the Motion to Dismiss, reinstatement of Plaintiff's federal claims would be futile.[2]

**ARGUMENT**

**I.   MUNICIPAL LIABILITY**

Plaintiff's § 1983 claim must be dismissed because the Complaint fails to allege facts showing that District police officers violated Plaintiff's constitutional rights pursuant to a municipal "policy or custom."  Moreover, other than conclusory statements in her proffered opposition memo, Plaintiff fails to demonstrate that the Complaint recites any municipal liability allegations, nor has she alleged a pattern of events sufficient to satisfy the stringent requirements of *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978).  *See* Complaint, generally.

Throughout the Complaint, Plaintiff contends that officers lacked probable cause to search her home due to numerous purported factual deficiencies in the warrant and/or its underlying affidavit.  *See* Complaint at ¶¶ 17, 35 – 38, 80 – 83, 86 and 91; *see also*

---

[2]   Given the procedural posture of the case and, likewise, in an abundance of caution, Defendants hereby incorporate the contents of their Motion to Dismiss [Docket # 5] as if fully set forth herein.

Search Warrant & Affidavit (attached as Exhibit "A").  Then, in her proffered opposition memo, Plaintiff suggests that these Complaint allegations of purported police misconduct place this case "squarely within *Barnhardt v. District of Columbia*, 2008 WL 2331915 (D.D.C.2008), in which the Court denied a motion to dismiss a § 1983 claim based on failure to train." [Docket # 6-2 at p. 10]. Yet, the Complaint allegations in Barnhardt differ vastly from Juliann Andreen's Complaint allegations.  For instance, Barnhardt expressly alleged that officers approached him; threw a black bag containing drugs onto the bed of a pick-up truck; threw Plaintiff onto the pick-up truck; forced Plaintiff's hand to touch the black bag's surface; then arrested Plaintiff for a serious drug offense; partially strip searched him in the front yard; held him without bond for nearly seven (7) months; and then dropped the charges.  *See id*. at * 1.

In this case, Plaintiff's § 1983 claim are based solely on purported deficiencies in the affidavit.  *See* Complaint at ¶ 78 – 89.  Yet, even making all inferences in Plaintiff's favor regarding factual omissions (if any) in the affidavit and warrant, Plaintiff cannot establish that the warrant and affidavit are constitutionally deficient, and does not even allege that facts were omitted pursuant to a municipal "policy or custom." Accordingly, the dismissal of Plaintiff's 1983 claim should be affirmed.

## II.   INTRACORPORATE CONSPIRACY DOCTRINE & QUALIFIED IMMUNITY

In her proposed opposition memo, Plaintiff suggests that Chief Lanier is not entitled to qualified immunity because she allegedly conspired to cover up the purportedly unlawful search of Plaintiff's home. [Docket # 6-2 at pp. 5 – 7].  Under the intracorporate conspiracy doctrine, two or more individuals within the same legal entity cannot form a legal conspiracy. *See Copperweld Corp. v. Independence Tube Corp.,* 467

U.S. 752, 777, 104 S.Ct. 2731, 2744 (1984); *Okusami v. Psychiatric Institute of Washington*, 959 F.2d 1062 (D.C. Cir. 1992). However, in her proffered opposition memo, Plaintiff cites *Kivanc v. Ramsey*, 407 F.Supp.2d 270 (D.D.C. 2006) (Friedman, J.), in an attempt to support her generalized argument that the intracorporate conspiracy doctrine does not apply to § 1983 claims. [Docket # 6-2 at p. 11]. Yet, a fair reading of *Kivanc* reveals that Judge Friedman's ruling turned on the particular facts of the case — facts that are totally incongruent with allegations recited in Juliann Andreen's Complaint.

First of all, *Kivanc* stemmed from an incident in which police allegedly punched, kicked and hit plaintiff as he lay on the ground; jailed plaintiff overnight; conspired to cover up the assault and battery by preparing a false police report; and dropped all charges the next morning. Judge Friedman denied the District's motion for judgment on the pleadings because, "the decisions alleged to have been made by police officers in this case were not the product of routine police department decision-making, and therefore the conduct plaintiff challenges here does not fit the mold of the intracorporate conspiracy doctrine cases." *Kivanc*, 407 F.Supp.2d at 276.

The Complaint in this case does not on its face allege any agreement among Defendants. If anything, the Complaint repeatedly suggests that there was disagreement borne out by, "inconsistencies in the different versions of explanations [Plaintiff] received . . . including the identity of the individual who made the purchase, where in the building the individual made the purchase, and what the observing officers witnessed during the purchase." *See* Complaint at ¶ 67; *see also id*. at ¶¶ 33 – 34, 48 – 49, 54 – 55 and 66. Secondly, unlike *Kivanc*, the act of preparing an affidavit is exquisitely the product of "routine police department decision-making," such that the conduct Plaintiff

challenges fits the mold of the intracorporate conspiracy doctrine.  Plaintiff's conspiracy claim must not be reinstated, and Chief Lanier must be granted qualified immunity.

        Respectfully Submitted,

        PETER J. NICKLES
        Acting Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General, Civil Litigation Division

        _____/s/_____
        PATRICIA A. JONES [428132]
        Chief, General Litigation Sec. IV

        ____/s/ Dwayne C. Jefferson_____
        DWAYNE C. JEFFERSON [980813]
        Assistant Attorney General
        One Judiciary Square
        441 4th St., N.W., 6th Floor South
        Washington, D.C. 20001
        (202) 724-6649; (202) 727-6295; (202) 741-0554 fax
        dwayne.jefferson@dc.gov

# Exhibit A

*JMcC*
*CO 6/1/07*

DJCRWSLD 1850

## SUPERIOR COURT OF THE DISTRICT OF COLUM
### SEARCH WARRANT



Case: 2007 CRWSLD 001850

**TO:** TO THE CHIEF OF POLICE OR ANY AUTHORIZED LAW ENFORCEMENT AGENT
(Specific Law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

Affidavit, herewith attached, having been made before me by    Ofc. Justin Linville #4283 Fifth District Psa 504
_____ that he has probable cause to believe that on the (person) (premises) (vehicle) (object) known as    The entire premisis of: 1016 17th Pl NE Apt.# 4 WDC. The premise is Described as a two story red brick apartment building with a white front door. The numbers '1016' are black affixed to the building to the above the front door. The apartment to be searched is #4 located on the second floor on the right immediately at the top of the stairs. The door to the apartment is white with a #4 in the center of the door.
in the District of Columbia, there is now being concealed certain property,    Narcotics (Crack Cocaine), additional drugs, drug packaging And processing materials, scales, cutting tools, cash, containers, safes, computers and other electronic devices which aid in the continuing criminal enterprise of narcotic trafficing such as but not limited to; records such as talley sheets books, receipts, notes, ledgers, bank records, telephone bills, money orders, and other papers documenting the importation, purchase, processing and manufacturing, ordering, sale and distribution of crack cocaine and other drugs as well as any other illegal items associated with drug sale, possession and proof of residence.
which is    A violation of D.C. code 48-904.1    and as I am satisified
(Alleged grounds for seizure)

that there is probable cause to believe that the property so described is being concealed on the above designated (person) (premises) (vehicle) (object) and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search in the daytime/at any time of the day or night, the designated (person) (premises) (vehicle) (object) for the property specified and if the property be found there.

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE an inventory of the property seized, to leave a copy of this warrant and return to file, a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this  7th  day of   June  , 20 07    _____
Judge, Superior Court of the District of Columbia

---

### RETURN

I received the above detailed warrant on    7 June   , 20 07  and have executed it as follows:
On   11 June  , 20 07 , at   1710   P M., I searched the (person) (premises) (vehicles) (object) described in the warrant and I left a copy of the warrant and return with  The Residence  properly posted.
(Name of person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:

— Nothing Seized —

This inventory was made in the presence of  Sgt Sloan, Sgt Haines, Det Abdalla, OFC Linville, OFC Derian, Det Lauder, Inv Manley, Det Dessin, OFC Garrett, OFC Wallace, OFC Mike
I swear that this is a true and detailed account of all property taken by me under this warrant.

_____
Executing Officer

Subscribed and sworn to before me this   12th   day of    June    , 20 07

_____
Judge, Superior Court of the District of Columbia

Form CD(17)-1955 / Mar. 99



# METROPOLITAN POLICE
## Washington D.C.

### AFFIDAVIT IN SUPPORT OF A D.C. SUPERIOR COURT SEARCH WARRANT

**SEARCH WARRANT FOR:** THE ENTIRE PREMISE OF: 1016 17th Pl NE, Apt#4 WDC. THE PREMISE IS DESCRIBED AS A TWO STORY RED BRICK APARTMENT BUILDING WITH A WHITE FRONT DOOR. THE NUMBERS '1016' ARE BLACK AFFIXED TO THE BUILDING TO THE ABOVE THE FRONT DOOR. THE APARTMENT TO BE SEARCHED IS #4 LOCATED ON THE SECOND FLOOR ON THE RIGHT IMMEDIATELY AT THE TOP OF THE STAIRS. THE DOOR TO THE APARTMENT IS WHITE WITH A #4 IN THE CENTER OF THE DOOR.

I, Justin Linville, an Officer with the Metropolitan Police Department (MPD), Fifth District, Washington, D.C., (hereinafter affiant) being duly sworn, depose and state as follows:

**STATEMENT OF FACTS:** It is known to Officer Justin Linville of the Fifth District PSA 504 that crack cocaine is being sold and stored from within 1016 17th Pl Street Apt# 4 N.E., Washington D.C. The premise is described as a two story red brick apartment building with a white front door. The numbers '1016' are black affixed to the building above the front door. The apartment to be searched is located on the second floor on the right immediately at the top of the stairs. The door to the apartment is white with a # 4 in the center of the door.

1. Your affiant has been a sworn member of the Metropolitan Police Department for more than 3 years and is currently assigned to the 5th District PSA 504. During my experience as a police officer I have been involved in numerous arrests for narcotics, gun violations, and other violations of the law. I have participated in several search warrants in which arrests were made and narcotics, money, and guns were recovered. I have received training from the Metropolitan Police Department in the identification and packaging of illicit drugs, specifically marijuana, cocaine, heroin and methamphetamines. Additionally I have assisted in interviewing suspects who have been charged with possessing firearms and narcotics

2. Based on your affiant's training, experience and extensive participation in narcotic and drug related investigations, your affiant knows that:

1

a. Individuals who deal in illegal controlled substances maintain books, records, receipts, notes, ledgers, bank records, money orders and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained where the dealers in illegal controlled substances have ready access to them, such as in secured locations within their residence, the residences of friends, family members, and associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

b. Individuals who deal in illegal controlled substances routinely conceal in their residences or the residences of friends, family members, and associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house, large quantities of currency, financial instruments, precious metals, jewelry and other items of value, typically proceeds of illegal controlled substance transactions.

c. It is common for individuals who deal in the sale and distribution of illegal controlled substances, particularly cocaine base, to secrete contraband related to the activity, such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, pots, dishes and other containers for converting cocaine into cocaine base, at their residences, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

d. Individuals who deal in the sale and distribution of controlled substances commonly maintain addresses and telephone number books or papers which reflect names, addresses and/or telephone numbers for their associates in their illegal organization. These individuals often utilize cellular telephones, pagers and telephone systems to maintain contact with their associates in their illegal businesses. These telephone records, bills and pager numbers are often found in their place of residence, or the residence of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

e. Individuals who deal in illegal controlled substances often take photos of themselves, their associates, their property and illegal contraband. These photos are usually maintained in their place of residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

f. Persons who traffic controlled substances maintain documents, letters and records relating to illegal activity for long periods of time. This documentary evidence is usually secreted in their residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash

house or safe house. This documentary evidence includes but is not limited to telephone numbers, telephone books, address books, credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, accounts and records in fictitious names, false identification, money orders, cashiers checks relating to cash transactions and records indicating the existence of storage facilities used in narcotics trafficking.

      g. Individuals involved in narcotics trafficking often own, possess and/or use weapons as a means to facilitate their illegal drug activities. Such weapons are most often secreted in their residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

**II. Background of this Investigation.**

3.     The reliability of the Special Employee (S.E.) is that it has provided on several occasions, information leading to narcotics arrests, specifically crack-cocaine and heroin and has never provided false information to the police while working as an S.E. No information provided by the S.E. to your affiants' knowledge has ever been misleading or incorrect. Information gathered by the S.E. has been used numerous times (10+) and has never been unreliable.

4.     Within the past seventy-two hours the affiant and members of the Fifth District Focus Mission Team met with the above-mentioned S.E. in reference to conducting a narcotics buy, from within 1016 17th Pl. Apt# 4, N.E. Officers met the S.E. at a pre-arranged location at which time the S.E. was searched for contraband and/or money. The search was negative. A sum of money from MPDC funds was given to the S.E. to make a controlled narcotic purchase from within the aforementioned premise of 1016 17th PL Apt# 4, NE Washington, DC. The S.E. proceeded to the location without coming into contact with anyone while being observed by the undercover officers. Once the S.E. approached he knocked on the door and was let inside the apartment. Inside the apartment the S.E. engaged in a conversation with an unknown male about the purchase of some crack cocaine. At this time the S.E. handed the unknown male an amount of pre-recorded MPDC funds and the male in exchange gave the S.E. (1) folded dollar bill, of US Currency, containing a tan rock substance. The S.E. then left the location and proceeded to a prearranged location without coming into contact with anyone while being observed by the undercover officers. The under covers then met with the S.E. at the pre-arranged location at which time the S.E. turned over the (1) folded dollar bill, of US Currency, containing the tan rock substance.

5.     A portion of the tan rock like substance was later field-tested which produced a positive color change for the presence of cocaine.

6.   Through your affiant's experience and knowledge, it's known that person's who distribute illegal narcotics make it a habit to store them at their place of residence. They do this for two reasons; one is to keep from being robbed of their product by rival narcotics traffickers and second to keep members of law enforcement from seizing their product. It is also known that drug traffickers keep packaging material, scales, tally sheets, ledgers, cooking utensils, cutting agents, cutting tools and other various items related to their possession, records, tally, notebooks, safes, proof of residence, and any other crimes in violation of District of Columbia and / or Federal Law is being stored inside of the premises described in the affidavit.

7.   Therefore, it is respectfully requested that a Search Warrant be issued for the premises known as **1016 17th PL Apt# 4 , N.E., Washington, D.C.** for the reasons set forth and for any other evidence of a crime that may be found. I have signed this document under oath as to all assertions and allegations contained herein and state that its contents are true and correct to the best of my knowledge.

_____
ATTORNEY

_____
AFFIANT
JUSTIN LINVILLE, Officer
Metropolitan Police Department

Sworn and subscribed to me this _____ day of June 2007.

_____
D.C. Superior Court Judge

4