UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JULIANN ANDREEN**<br><br>    **Plaintiff**<br><br>        v.<br><br>**MPD CHIEF CATHY LANIER,**<br>**THE DISTRICT OF COLUMBIA,**<br>*et al.,*<br><br>    **Defendants** | Case No. 1:08–cv– 0810 –ESH<br><br><br><br>August 15, 2008 |

**PLAINTIFF JULIANN ANDREEN'S OPPOSITION**
**TO DEFENDANTS' SUPPLEMENTARY MEMORANDUM**
**SUPPORTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Juliann Andreen, through counsel, respectfully files this opposition to Defendants' supplementary memorandum supporting their motion to dismiss.

This Court should deny Defendants' motion because the officers did violate Ms. Andreen's Fourth Amendment rights and are not entitled to qualified immunity.

**Ms. Andreen requests a hearing concerning this matter.**

### I.  PROCEDURAL POSTURE

On July 31, 2008, your Honor ordered Defendants to file a supplementary motion by August 6, 2008, addressing whether the officers violated Ms. Andreen's Fourth Amendment right because they failed to do so in their motion to dismiss.[1] Your Honor ordered Ms. Andreen to submit her opposition by August 15, 2008.

---

[1] A Minute Order dated August 1, 2008, was filed in confirmation of the order given the previous day.

Defendants filed their motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6). However, Defendants attached a copy of the warrant and accompanying affidavit to their memorandum in opposition to Ms. Andreen's motion to reinstate. In essence, Defendants have converted their motion to dismiss into a motion for summary judgment by attaching documents related to material facts.[2]

## I. ARGUMENT

**A.   The Officers Violated Ms. Andreen's Fourth Amendment Rights.**

The first question to determine if qualified immunity exists is whether an officer violated an individual's constitutional right. If yes, then, was the right clearly established when the officers acted. Only then can an officer plead qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Officer Justin Linville, Sergeant Haines, Sergeant Parsons, Sergeant Curt Sloan, Detective Earl Delauder, Investigator Abdalla and other unknown officers violated Ms. Andreen's Fourth Amendment right, which guarantees:

> [T]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A private citizen's right to be secure in her person, home, papers and effects is an inherent right and for the government to violate it, there must be sufficient justification.

---

[2] Ms. Andreen includes, by reference, all her arguments from her first opposition.

A law-abiding individual should be able to trust that when she leaves her home she will return home and find nothing amiss. Ms. Andreen's rights were violated, and she has lost trust that her person, home, papers and effects are safe from unreasonable search and seizure.

On June 11, 2007, Ms. Andreen's right to be secure in her person, house, papers and effects was violated by MPD officers who ignored the law and executed a warrant supported by an affidavit clearly lacking indicia of probable cause.

But for an MPD officer's dishonesty or reckless disregard of the truth when drafting the supporting affidavit, Ms. Andreen would not have returned home on June 11, 2007, and found her front doors broken, personal effects on the floor, and papers shuffled through. Ms. Andreen rushed home after receiving a call from one of her tenants that the house and Ms. Andreen's apartment looked like it had been broken into.

But for the actions of the officers and their disregard for her rights, Ms. Andreen would not have had to explain to her tenants why the front door was broken, why the back gate was left open for trespassers, and why officers had invaded their privacy.

In *U.S. v. Leon*, 468 U.S. 897 (1984), the Supreme Court outlined four instances when a search warrant, signed by a judge or magistrate and executed by government officers, is invalid:

> (1) if the affiant included information in the affidavit that misled the judge that the affiant knew was false or would have known was false, except for his reckless disregard of the truth;
>
> (2) the issuing judge or magistrate wholly abandoned his or her detached and neutral judicial role;
>
> (3) an officer claimed good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

>  (4) a warrant is so facially deficient — *i.e.,* failing to particularize the place to search or the things to seize — that the officers could not reasonably presume it to be valid.

*Leon,* 468 U.S. at 922-925.

The warrant in this case falls into two of the *Leon* categories. First, an officer could not claim good faith reliance on the warrant because the attached affidavit so lacked sufficient indicia of probable cause. Second, Officer Linville submitted a supporting affidavit he knew or should have known, but for his reckless disregard of the truth, contained false information which misled the judge.

Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers relied on a warrant based on a supporting affidavit clearly lacking indicia of probable cause.

A simple examination of the affidavit and Ms. Andreen's apartment should have established the inadequacies of the affidavit. In fact, Detective Delauder, Sergeant Sloan and Investigator Joe Abdalla left Ms. Andreen's apartment immediately after breaking the door, each stating in their experience "it was not the typical premises he is used to searching."

The officers remaining in Ms. Andreen's apartment pawed through Ms. Andreen's family photo albums, tossed pictures on the television and an antique dresser, opened bills, sorted through her drawers, tore off her stereo speaker covers and moved her bed mattress.

When Ms. Andreen returned home, she had no idea it was police who destroyed her apartment and damaged the building's front door. She immediately called 311, a non-emergency police number, for an officer to come to the apartment to ensure it was safe to enter.

Ms. Andreen did not know the MPD had executed a warrant until she finally found a copy of the warrant posted in her kitchen, after calling the police. The door to her apartment was not secure enough for the officers to affix the warrant to it.

An officer executing this warrant could not reasonably presume it to be valid after looking at the supporting affidavit which clearly lacked indicia of probable cause. According to the affidavit, MPD officers met with a Special Employee (SE) to conduct a drug buy at 1016 17th Place NE, Apt. #4. The affidavit fails to give any reason why the Fifth District Mission Team would focus on Ms. Andreen's apartment. Officer Linville does not state that any MPD officer witnessed the SE enter the building. Officer Linville does not state that MPD officers watched the SE constantly from the time they searched the SE to the time the SE entered the apartment. Officer Linville does not state that any MPD officer observed the SE purchase drugs from "an unknown male" in Apartment #4.

Officer Linville does not say that he or any other officer witnessed the SE exchange the marked "MPD funds" for drugs. He does not state the amount of "MPD funds" given to the SE. Officer Linville put in that information concerning the alleged "MPD funds" to dress up the affidavit. He put in the information about the marked funds to dress up the warrant. However, Officer Linville knew that the likelihood of recovering the "funds" was nil, thus rendering the information useless.

Officer Linville does not state that MPD officers watched the SE the entire time when he left the apartment until the SE reached a prearranged location. All Officer Linville states in the affidavit is the SE left the house "without coming into contact with anyone **while** being observed

by the undercover officers." Nor was Officer Linville the officer who field-tested the substance the SE allegedly purchased.

Despite the deficiencies in the supporting affidavit, Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, and Investigator Abdalla executed the warrant anyway, in violation of Ms. Andreen's rights.

Officer Linville either lied or disregarded the truth when he submitted the supporting affidavit and warrant request to the Judge. Officer Linville did not perform any information search on the home to identify the owner and/or residents. If Officer Linville had checked, he would have found that Ms. Andreen, a long-time aide to Senator Orrin Hatch, owned the building for several years and resided in apartment #4. Officer Linville would have learned that the residents in the other apartments were professionals.

If Officer Linville, or any other officer, had taken time to speak to other MPD officers who regularly worked in Ms. Andreen's neighborhood, he would have learned that Ms. Andreen actively participated in community meetings and efforts to prevent drug sales and use.

If Officer Linville, or any other officer had taken time to speak to other MPD officers that regularly worked in Ms. Andreen's neighborhood, he would have learned that Ms. Andreen helped local officers whenever she could.

If Officer Linville, or any other officer, had taken time to speak to other MPD officers that regularly worked in Ms. Andreen's neighborhood, he would have learned that the officers held a high opinion of Ms. Andreen and would never suspect her of selling narcotics. In fact, Officer Linville did not take any steps to corroborate any information in the affidavit.

Officer Linville failed to exhibit any concern about the veracity of the affidavit. In fact, in an effort to justify the search, officers inferred that Ms. Andreen's son and/or daughter, both of whom lived in other states, were selling drugs in Ms. Andreen's apartment. This conduct evidences Officer Linville's total disregard Ms. Andreen's Fourth Amendment right to be free from unreasonable searches.

Defendants have not yet answered Ms. Andreen's complaint and discovery has not begun. Document requests and depositions of Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers to be determined can provide the additional facts to support findings that:

1. the judge issuing the warrant was misled by information in the affidavit that affiant Officer Linville knew or should have known were false, but for his reckless disregard of the truth, and

2. an officer could not claim good faith reliance on the warrant because the attached affidavit was so lacking in indicia of probable cause.

Defendants argue that the search warrant is valid, based on *Leon*. In their memorandum, Defendants state that in *Leon*, the Supreme Court held that:

> ... the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.

(Defendants' Supplemental Memorandum at 3).

The Defendants' reliance on *Leon*, however, is misplaced. This holding involved the admissibility of evidence, not whether the search was legitimate. Ms. Andreen's position is that the officers here could not execute a warrant that was based on an affidavit lacking indicia of

probable cause and containing information that misled the judge, which the affiant knew was false or recklessly disregarded the truth.

*Leon* supports Ms. Andreen's case because this decision explains the four instances when a judge's issuing a warrant does not negate an officer's violation of an individual's constitutional right. As explained above, the warrant in this case falls within two of these categories.

In *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), Sheppard challenged a warrant in which the judge made a mistake "making necessary changes" to the warrant the officer gave him. Sheppard claimed that the warrant lacked particularity as to items to be seized. The detective requesting the warrant showed the affidavit to the District Attorney, the District Attorney's first assistant and a sergeant. *Sheppard*, 468 U.S. at 985. The court held that the evidence did not have to be excluded because while "an error of constitutional dimensions may have been committed with respect to the issuance of the warrant, ... it was the judge, not the police officers, who made the critical mistake." *Sheppard*, 468 U.S. at 990.

In that case, the judge made a mistake. In this case, the officers made the mistake. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers cannot say that the warrant violated Ms. Andreen's rights due to a D.C. Superior Court Judge's mistake. Officer Linville submitted the affidavit in support of the warrant. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers executed the warrant on Ms. Andreen's residence despite glaring inconsistencies in the supporting affidavit.

In addition, *Sheppard,* like L*eon,* involves the exclusionary rule, which disallows evidence seized in violation of the Fourth Amendment against an individual in court.

The "good faith" exceptions to the exclusionary rule exists not to forgive violations of an individual's Fourth Amendment rights, but to avoid hamstringing prosecutors because of police officers' errors.

An individual's right have her person, house, property and effects protected from unreasonable search and seizure is not diminished by *Leon, Sheppard,* or other cases admitting illegally obtained evidence. The officers found nothing they were looking for in Ms. Andreen's home and have not charged her with any criminal offense.

Moreover, *Leon* and *Sheppard* are procedurally different from this case. Discovery had already taken place and was closed. There has been no discovery here. Defendants have not even filed an answer.

In *Malley v. Briggs*, 475 U.S. 335, 345 (1986) the court*,* quoting *Leon,* stated:

> ... our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization. The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest.

Defendants' argument that, because Ms. Andreen was not arrested like Briggs in *Malley*, that the principle of *Malley* is irrelevant, is ridiculous. *Malley* holds that if an officer violates an individual's rights, the officer's actions must be objectively reasonable. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers violated Ms Andreen's Fourth Amendment right when they searched her house with an invalid warrant that a reasonable, well-trained officer would have recognized as facially deficient and relying on an affidavit lacking indicia of probable cause.

Unlike Officer Linville, a reasonable officer would not have submitted the affidavit in support of the warrant because he or she would have seen the falsities or not lied in the affidavit. Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers actions were not objectively reasonable.

Defendants claim that Ms. Andreen has not established that her rights were violated when Officer Linville submitted the affidavit that he knew would mislead the judge into believing there was probable cause for a search warrant. Ms. Andreen, however, has explained in her complaint, opposition to defendants' motion to dismiss, and this memorandum how the officers violated her rights.

Defendants state that Ms. Andreen has not established that her rights were violated when Officer Linville, Sergeant Haines, Sergeant Parsons, Sergeant Sloan, Detective Delauder, Investigator Abdalla and other unknown officers searched her residence based on a warrant supported by an affidavit lacking indicia of probable cause. Ms. Andreen, however, has explained in her complaint, her earlier opposition to defendants' motion to dismiss, and in this memorandum how the officers violated her rights.

*Dent v. May Department Stores Company t/a The Hecht Company*, 459 A.2d. 1042, 1044 (D.C. 1982), explained that "probable cause is a mixed question of law and fact" and only becomes a question of law when no facts are in dispute. See *Jackson* v. *District of Columbia*, 541 F. Supp. 2d 334 (D.D.C. 2008).

In Ms. Andreen's case the question of probable cause is a mixed question of fact and law.

**B.  The Officers Are Not Entitled to Qualified Immunity Because a Reasonable Officer Would Not Have Taken the Same Actions.**

Ms. Andreen has established that the officers violated her Fourth Amendment right. The officers knew or should have known that an illegal search of Ms. Andreen's home violated her Fourth Amendment rights.

A reasonable, well-trained officer should have noticed that the accompanying affidavit lacked sufficient indicia of probable cause. And a reasonable, well-trained officer would not have submitted an affidavit filled with holes, inconsistencies and falsities to a judge with the intention of misleading him or her for the purpose of obtaining a warrant.

After determining that an officer's conduct violated an individual's constitutional rights and that those rights were established at the time, the next step is an objective, fact-based determination as to whether a reasonable officer in defendant officer's position would have taken the same actions that violated a plaintiff's rights. *Anderson v. Creighton,* 483 U.S. 635, 639 (1987).

Ms. Andreen has satisfied the *Saucier* test, showing the officers violated her rights and that the officers knew, or should have known, the right they violated existed. The next question is whether a reasonable officer in the officers' positions in Ms. Andreen's case would have taken the same actions in violation of Ms. Andreen's rights. The simple answer to that question is "NO."

Given the circumstances surrounding the composition of the affidavit, submitting it to the judge in support of a warrant, the lack of particularity in the warrant describing the place to be searched, and the lack of indicia of probable cause in the affidavit, a reasonable officer would not

have taken the same actions. The officers totally disregarded Ms. Andreen's Fourth Amendments rights.

**C.   Ms. Andreen's Complaint Satisfies Fed. R. Civ. Pro. Rule 8 and 12(b)(6).**

Defendants again argue that Ms. Andreen has failed to state a claim for which relief can be granted. Ms. Andreen fully addressed this issue in her opposition to defendants' motion to dismiss.

However, for the sake of the Defendants, Ms. Andreen will again explain the requirements for a complaint. As the District of Columbia Circuit explained in *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008):

> Ordinarily, a sufficient complaint "contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief," enough to give a defendant "fair notice of the claims against him."

Moreover, in deciding a Rule 12(b)(6) motion, the court:

> ... "constru[es] the complaint liberally in the plaintiff's favor, "[a]ccepting as true all of the factual allegations contained in the complaint ... with the benefit of all reasonable inferences derived from the facts alleged ...."

Id. (Citations omitted).

The Defendants' interpretation of *Twombly* is erroneous. *Aktieselskabet* specifically addressed this "plausibility test" interpretation. As the court there explained:

> ... the district court interpreted *Twombly* as establishing a new threshold for complaints; enough facts to "clarify the grounds" on which each claims rests and "nudge[ ] their claims across the line from conceivable to plausible." ... Many courts have disagreed about the import of *Twombly*. We conclude that *Twombly* leaves the long-standing fundamentals of notice pleading intact.

525 F.3d at 15.

*Aktieselskabet* further noted that *Twombly* upheld the pleading standard of Rule 8 — that the Complaint simply provide notice of the case's general nature and the circumstances or events upon which the claim is based. Id. at 16. Therefore, said *Aktieselskabet*, a specific quantity of facts was not required, but only:

> a short and plain statement of the claim showing that the pleader is entitled to relief.

Id.

Concerning the lower courts' imposition of 'various requirements of particularity" as to complaints, *Aktieselskabet* stated:

> The Supreme Court has continually pruned back such requirements, with the admonition that we are not to impose heightened pleading requirements. ... After decades of consistency, we will not lightly assume the Supreme Court intended to tighten pleading standards.

Id.

About the heightened pleading standard in *Twombly*, the *Aktieselskabet* court concluded:

> In sum, *Twombly* was concerned with the plausibility of an inference of conspiracy, not with the plausibility of a claim. A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint "may proceed even if it appears 'that a recovery is very remote and unlikely,'" ... a complaint "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations .... " Further, the court must assume "all the allegations in the complaint are true (even if doubtful in fact)" ... and the court must give the plaintiff "the benefit of all reasonable inferences derived from the facts alleged." ...

Id. at 17. (Citations omitted).

Using the correct interpretation of *Twombly*, this Court should deny Defendants' motion to dismiss.

## CONCLUSION

In light of the above, this Court should deny the Defendants' motion to dismiss because the officers violated Ms. Andreen's Fourth Amendment rights and are not entitled to qualified immunity because a reasonable officer would not have taken the same actions.

Ms. Andreen requests a hearing concerning this matter.

                                                          Respectfully submitted,

August 15, 2008                                */s/  **James R. Klimaski**
                                                      James R. Klimaski, #243543

August 15, 2008                                */s/ **Megins S. Skolnick**
                                                        Megins S. Skolnick, # 498452

                                                      Klimaski & Associates, P.C.
                                                      1625 Massachusetts Avenue NW
                                                      Suite 500
                                                      Washington, DC  20036-2245
                                                      202-296-5600
                                                      Klimaski@Klimaskilaw.com
                                                     Skolnick@Klimaskilaw.com

                                                    ***Attorneys for Juliann Andreen***

## Certificate of Service

I certify that the foregoing *Plaintiff Julian Andreen's Opposition to Defendants' Supplemental Memorandum to their Motion to Dismiss* will be served to the following counsel for Defendants in this case by the Court's CM/ECF system after proper filing of an Adobe PDF version of this item on the Court's secure website on August 15, 2008:

DWAYNE C. JEFFERSON
Assistant Attorney General
Office of the D.C. Attorney General
441 4th Street NW
6th Floor South
Washington, D.C. 20001
(202) 741-0554 fax
dwayne.jefferson@dc.gov

                                            */s/ Jon Pinkus*
                                            Jon Pinkus
                                            Klimaski and Associates, PC