UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                  )
JULIANN ANDREEN,                                  )
                                                  )
            Plaintiff,                            )
                                                  )
        v.                                        )   Civil Action No. 08-0810 (ESH)
                                                  )
CATHY LANIER, *et al.*,                           )
                                                  )
            Defendants.                           )
_____)

**MEMORANDUM OPINION**

        Plaintiff Juliann Andreen filed this lawsuit against the District of Columbia, Police Chief

Cathy Lanier, and a list of Metropolitan Police Department ("MPD") officers.  Plaintiff seeks to

recover damages based on claims of constitutional and common law torts arising from the

allegedly unlawful search of her home at 1016 17th Place N.E., Apt. #4.  Defendants have filed

motions to dismiss, which for the reasons stated herein, will be granted.

**BACKGROUND**

        On June 11, 2007, at approximately 5:10 p.m., several MPD officers executed a search

warrant at 1016 17th Place N.E., Apt. #4. (Def.'s Ex. 1 [Search Warrant and Affidavit] at 1.)[1]

The search warrant was issued by a judge of the District of Columbia Superior Court based on an

affidavit submitted by Officer Justin Linville.  (*Id.*)

        Officer Linville represented that within the seventy-two hours prior to the submission of

_____

        [1] The Court may take judicial notice of the search warrant and affidavit without
converting the motion to dismiss into a motion for summary judgment. *See Vance v. Chao*, 496
F.Supp.2d 182, 184 n. 1 (D.D.C. 2007).

the affidavit, he and members of the Fifth District Focus Mission Team met with a Special

Employee ("SE") of the MPD at a prearranged location and searched the SE for contraband and

money. (*Id.* at 3.)  The SE was given MPD funds to make a controlled buy of narcotics from

1016 17th Place N.E., Apt. #4. (*Id.*)  The SE then proceeded to that address under observation of

MPD officers. (*Id.*)  The SE did not come into contact with anyone en route to the building.

(*Id.*)  The SE knocked on the door of the residence and was let inside, where the SE handed an

unknown male a sum of currency in exchange for a dollar bill containing a tan rock substance.

(*Id.*)  The SE then left the residence, proceeded to a prearranged location under observation of

the officers, and turned over the dollar bill with the tan rock substance. (*Id.*)  The substance

tested positive for cocaine. (*Id.*)  Linville stated that the SE had previously provided reliable

information on more than ten occasions and had never provided information that was misleading

or incorrect. (*Id.*)

Plaintiff  was not home at the time the warrant was executed. (Compl. ¶ 19.)  She alleges

that she returned home to find that the front door to the building and to her home were broken

and that the back gate was left open. (*Id.* ¶¶ 20-25.)  She claims the officers went through her

photos and her drawers, opened a bill, took the covers off her stereo speakers and moved her bed

mattress. (*Id.* ¶ 31.)  No contraband was found and no arrests were made.

Plaintiff contacted the MPD several times to find out why her apartment had been

searched and was unsatisfied with the information provided to her.  She alleges that she received

inconsistent explanations as to whether the information in the affidavit came from a Special

Employee or a Confidential Informant, and as to where and from whom the narcotics were

purchased inside the building. (*Id.* ¶¶ 47-67.)  On November 13, 2007, plaintiff picked up a

copy of the internal investigation from the MPD.  (*Id.* ¶ 72.)  It included an undated

memorandum in which the Director of Internal Affairs indicated that the SE might have provided

false information and it was possible that the wrong apartment had been searched as a result.

(*Id.* ¶¶ 73-74.)  The investigation report also included recommendations by Lieutenant Dean

Welch that (1) MPD should set a standard for properly securing a premises after forced entry; (2)

departmental reviews of affidavits should be done by officers at the rank of lieutenant or higher

with appropriate experience; and (3) Ms. Andreen should receive accurate information about the

affidavit.  (*Id.* ¶ 75.)

On May 9, 2008, plaintiff filed a complaint in this Court alleging that the officers who

participated in the search are liable under 42 U.S.C. § 1983 for violating her Fourth Amendment

rights by unlawfully searching her residence and conspiring to unlawfully search her residence.

She further alleges that the officers intentionally and tortiously destroyed her property and were

negligent in preparing the affidavit and conducting the search.  Plaintiff also claims that the

District is liable for failing to educate, train, and supervise the MPD officers on how to write an

affidavit and obtain a search warrant.[2]   Finally, she has brought a claim against Chief Lanier in

her individual capacity, alleging that Lanier personally participated in a conspiracy to cover-up

the MPD's violation of her constitutional rights.

Defendants have filed motions to dismiss arguing, *inter alia*, that the individual officers

are entitled to qualified immunity, that plaintiffs have failed to state a claim against the District,

and that the Court should decline to exercise supplemental jurisdiction over plaintiff's common

---

[2] In her complaint, plaintiff also raised a *respondeat superior* claim against the District, and a negligent training and supervision claim against Lanier in her official capacity.  Plaintiff is no longer pursuing these claims.  (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss 1 n.1.)

law claims.

### ANALYSIS

"Qualified immunity shields a government official from liability under § 1983 provided

that the official's conduct did not violate a clearly established constitutional right of which a

reasonable person would have known." *Powers-Bunce v. District of Columbia*, 541 F.Supp.2d

57 (D.D.C. 2008) (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).   Claims of qualified

immunity should be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533

U.S. 194,  200-01 (2001) (quotation marks and citation omitted).   To determine whether

qualified immunity applies, the Court must first determine whether plaintiff's allegations, taken

as true, show that the official's conduct violated a constitutional or statutory right, and if so,

whether that right was clearly established at the time of the alleged violation.  *Id.* at 201.

Plaintiff contends that the search of her home violated the Fourth Amendment because

the warrant which authorized the search of her home was unsupported by probable cause.  (*See*

Pl.'s Opp'n to Defs.' Supp. Mot. 3.)  As plaintiff acknowledges, however, when police officers

obtain a warrant before executing a search, they are ordinarily entitled to rely on the issuing

judge's determination that probable cause exists.  *See United States v. Spencer,* 530 F.3d 1003,

1006-07 (D.C. Cir. 2008).  "Only where the warrant application is so lacking in indicia of

probable cause as to render official belief in its existence unreasonable . . . will the shield of

[qualified] immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation

omitted).

The affidavit in this case indicates that the officers sought a warrant on the basis of a

reliable informant's tip corroborated by a single controlled buy, a procedure that the D.C. Circuit

has "consistently . . . recognized" is sufficient to establish probable cause.  *See United States v.*

*Warren*, 42 F.3d 647, 652 (D.C. Cir. 1994) (citing *United States v. Allen*, 960 F.2d 1055, 1057

(D.C. Cir. 1992); *United States v. Branch*, 545 F.2d 177, 179-80 (D.C. Cir. 1976)).[3]  Plaintiff

attempts to undermine the validity of the controlled buy by parsing the language of the affidavit.[4]

She points out that Officer Linville did not explicitly state that the SE provided the initial "tip;"

did not say that the SE was under continual surveillance prior to entering the apartment; and does

not claim that he or any other officer observed the controlled buy.[5]  (*See* Pl.'s Opp'n to Defs.'

Supp. Mot. 5-6.)  After reviewing the affidavit, the Court disagrees that these alleged

inadequacies discredit the issuing judge's probable cause determination, which is entitled to

"great deference."  *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks

---

[3]   Plaintiff also asserts that Officer Linville was required to engage in a number of additional steps prior to seeking the search warrant, including, *inter alia*, identifying and conducting a background check on the owner of the apartment and the building and talking to other MPD officers who worked in plaintiff's neighborhood.   However, she cites no legal authority in support of this novel position, and indeed, this argument is contradicted by longstanding precedent in this Circuit.   While more extensive investigation might have been beneficial, it was not constitutionally required to establish probable cause.  Nor can this alleged lack of investigation provide any basis for asserting that Linville either lied or disregarded the truth in drafting his affidavit.  (*See* Pl.'s Opp'n to Defs.' Supp. Mot. 6.)   "Probable cause requires only a probability or substantial chance that evidence may be found; it does not, by contrast, require absolute certainty."  *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006).

[4] Plaintiff also claims that the affidavit is undermined by the fact that Officer Linville did not personally field test the substance purchased by the SE during the drug buy.  However, it is well-established that an officer may rely on information received from other officers so long as the source of that information is given so that the reviewing magistrate can properly evaluate probable cause.  *See United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983); *United States v. Ventresca*, 380 U.S. 102, 110-11 (1965).  Linville's affidavit clearly specified which actions were taken or observed by police officers and which were done by the SE.

[5] Plaintiff also notes that Officer Linville did not specify the amount of money that was provided to SE for the controlled buy, but fails to explain why this omission would in any way be relevant to the determination of probable cause.  (*See* Pl.'s Opp'n to Defs.' Supp. Mot. 5.)

omitted).

Plaintiff's analysis of the affidavit ignores the well-established principle that warrants, and their underlying documents, are not to be read "'hypertechnically,' but in a commonsense fashion.'" *United States v. Gendron*, 18 F.3d 955, 966 (1st Cir. 1994).   A plain reading of the affidavit establishes that MPD set up a controlled buy to confirm a tip by a reliable SE and that the controlled buy was conducted in conformance with standard practice.   Morever, even if plaintiff were correct that MPD did not observe the SE entering plaintiff's apartment that would not be dispositive in determining probable cause.  *See United States v. Richardson*, 861 F.2d 291, 294 (D.C. Cir. 1988) ("It is not necessarily crucial to a finding of probable cause that a police officer observe an informant enter the specific apartment where the controlled buy is being conducted.").   The Court therefore agrees with the issuing judge that probable cause existed to justify the search.

However, even if the Court were to find that probable cause was lacking, there is "no plausible basis for finding the affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Spencer,* 530 F.3d at 1008 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).  This warrant application was not based on "wholly conclusory statements, which lack the facts and circumstances from which [the superior court judge could] independently determine probable cause." *United States v. Laury*, 985 F.2d 1293, 1331 n. 23 (5th Cir. 1993) (quotation marks and citation omitted).  To the contrary, it was quite specific.  Thus, even if a technical inaccuracy rendered the warrant invalid, there would be no basis for finding a constitutional violation.   Because plaintiff has failed to allege a constitutional violation, her § 1983 claims against the individual defendants and against the District are

dismissed.[6]  Moreover, because plaintiff has failed to allege any viable claims under federal law,

the Court declines to assert supplemental jurisdiction over her common law claims.  *See* 28

U.S.C. § 1367(c)(3); *Shekoyan v. Sibley Int'l.*, 409 F.3d 414, 423-24 (D.C. Cir. 2005).

### CONCLUSION

For the reasons stated herein, defendants' motions to dismiss [Dkt. 5, 14] are

**GRANTED**.  Counts I, II, III, IV, VII, and VIII are dismissed with prejudice and Counts V and

VI are dismissed without prejudice.  An Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:    August 26, 2008

---

[6]  Additionally, plaintiff's conspiracy claims against the named officers and against Chief Lanier must also be dismissed.  "[I]n the District of Columbia, a conspiracy requires: an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of an agreement by someone participating in it; and injury caused by the act." *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983).  Because the Court concludes that the search of plaintiff's home was lawful, plaintiff has failed to state a claim for conspiracy against any of the defendants.